**2008 BNH 018**

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                        Bk. No. 05-15221-JMD
                                                              Chapter 7
Robert G. Plourde and
Debra A. Plourde,
                    Debtors


*Michael S. Askenaizer, Esq.*
*Law Office of Michael S. Askenaizer*
*Nashua, New Hampshire*
*Chapter 7 Trustee*

*Grenville Clark, III, Esq.*
*Gray, Wendell & Clark*
*Manchester, New Hampshire*
*Attorney for Creditors*


## MEMORANDUM OPINION

**I.      INTRODUCTION**

On March 15, 2006, Michael Askenaizer, the chapter 7 trustee (the "Trustee"), filed an

objection to various claims of creditors in this case (the "Claims Objection").  Among the

various objections, the Trustee objected to the allowance of proof of claim number 4 ("POC 4"),

filed by American Express Bank, FSB ("AmEx"), and proof of claim number 18 ("POC 18"),

filed by eCast Settlement Corporation, assignee of HSBC Bank Nevada, NA ("eCast")

(collectively, the "Claims").[1]   The Trustee contends that POC 4 and POC 18 fail to include the

---

[1]  In this opinion, AmEx and eCast are collectively referred to as the "Creditors."

information required by the official proof of claim form, Official Form B10[2] (the "Official

Form" or "Form B10"), and Federal Rule of Bankruptcy Procedure 3001.[3]  He argues that their

failure to do so is sufficient grounds for the Court to disallow both Claims.  The Creditors filed a

response to the Claims Objection and the Court held a hearing at which both sides presented

arguments, and the matter was taken under submission.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States

Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

This is a core proceeding in accordance with 28 U.S.C. § 157(b).


## II.    BACKGROUND

### A.    Factual Background

A voluntary petition for relief was filed by Robert and Debra Plourde (the "Debtors")

under chapter 7 of the Bankruptcy Code[4] on October 14, 2005 (the "Petition Date").  On the

Petition Date the Debtors also filed all required schedules.  Their schedule F listed two

---

[2]  As used in this opinion, Official Form B10 refers to the official form in existence at the time the Creditors filed their proofs of claims.  The official bankruptcy forms are occasionally revised with new instructions, language and numbering.  The date of last revision on each form is indicated by month and year at the top of each page next to the title of each form.  See Bankruptcy Forms Manual, http://www.uscourts.gov/bkforms/bankruptcy_forms.html#official.  The Creditors here used the previous Official Form B10, last revised in September 1997.

[3]  Unless otherwise indicated, in this opinion the terms "Bankruptcy Rule" or "Rule" shall mean the Federal Rules of Bankruptcy Procedure.

[4]  Unless otherwise indicated, in this opinion the terms "Bankruptcy Code," "section" or "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., prior to amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

unsecured, nonpriority debts to AmEx; however, neither of these correspond to the debt alleged in POC 4.  Schedule F listed no debts to eCast although it did list an unsecured, nonpriority debt with the same account number as listed in POC 18 in the amount of $6,309.75 under the name "The GM Card."[5]

AmEx filed three timely, general unsecured claims on revolving credit accounts.  Two of these claims referenced account numbers matching the two AmEx debts scheduled by the Debtors and the third claim, POC 4, referenced a revolving credit account debt not scheduled by the Debtors in the name of "Debra Plourde, Elect. Contr/Assoc." for $42,452.61.  POC 4 was comprised of two parts, the Official Form and a single-page copy of an account statement dated October 14, 2005, which matched the amount of the claim stated on the Official Form and further indicated that the account was cancelled and suspended.  POC 4 did not indicate whether the claim included interest or other charges and no itemization of such interest or charges was attached.

Creditor eCast filed one timely, general unsecured claim, POC 18, for $6,813.06.  In addition to the Official Form, its proof of claim included a single-page, computer-generated summary of the account, which provided minimal account information and identified eCast as the "assignee of HSBC Bank Nevada NA/HSBC Card Services and its Assigns."  POC 18 did not indicate whether the claim included interest or other charges and no itemization of such interest or charges was attached.

### B.  Procedural Background

---

[5] In the Claims Objection, the Trustee acknowledged that the eCast Claim is identified in Schedule F as "The GM Card debt."

After the deadline to file claims had passed, the Trustee filed the Claims Objection in which he objected to numerous claims for a variety of reasons.  The Court held an initial hearing on the Claims Objection at which all objections were resolved except for the objections to POC 4 and POC 18.

The Trustee objected to POC 4 on the grounds that: (1) the claim is not listed on the Debtors' schedules; (2) the documentation attached to POC 4 is insufficient to establish any liability of the Debtors for the obligation, but rather the documentation reflects that the obligation is owed by a business identified as "Elect. Contr/Assoc."; (3) no documentation is included with POC 4 to establish that Mrs. Plourde is personally liable for the obligation; and (4) the claim likely includes interest and other charges not reflected in any itemized statement with the Claim.  After the Claim Objection was filed, AmEx provided the Trustee with credit card agreements executed by Mrs. Plourde as well as eight account statements for the period November 2004 through July 2005.  Accordingly, the Trustee's objection has been limited to AmEx's failure to include with its proof of claim an itemization of interest and other charges or to otherwise provide such information to the Trustee.

The Trustee objected to POC 18 on the ground that, although the Claim appeared to match the account number of a claim listed by the Debtors in their bankruptcy schedules under "The GM Card," the amount stated in POC 18 was greater than the amount scheduled by the Debtors and appeared to include interest and other charges for which no itemized statement was included with the Claim.  eCast filed POC 28 as an amendment to POC 18 and attached to the amended proof of claim six pre-petition account statements.  However, it did not include, or provide to the Trustee, any credit card agreements or itemization of interest or other charges.

4

The Trustee asserts that because neither POC 4 nor POC 18 provided sufficient evidence under Bankruptcy Rule 3001(a) and (c) to constitute prima facie evidence of the validity and amount of the Claims under Bankruptcy Rule 3001(f), both Claims should be disallowed. Following the initial hearing, the Creditors filed a response to the Claims Objection in which the Creditors refused to amend their claims to reflect any interest or other charges that had been applied or to provide the Trustee with a breakdown of these charges. The Court held a second hearing after which the matter was taken under submission.

## III.    DISCUSSION

A resolution of the Claims Objection requires the Court to first determine what is required under applicable laws and procedures regarding the filing and allowance of unsecured claims in general and credit card claims in particular. The Court shall then apply those substantive and procedural requirements to the Claims at issue in the Claims Objection.

### A.    Filing and Allowance of Claims

The filing and allowance of creditor claims in bankruptcy proceedings are governed by §§ 501 and 502 of the Bankruptcy Code. <u>Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.</u>, 549 U.S. 443, 127 S.Ct. 1199, 1204 (2007). Section 501 provides that only a creditor or an indenture trustee may file a proof of claim.[6] Section 502 provides that a proof of claim filed under § 501 is deemed allowed unless a party in interest objects. Section 502(b) provides that the bankruptcy court, after notice and a hearing, "shall determine the amount of such claim

---

[6] An exception applies when a creditor has failed to timely file a proof of claim. In such circumstances, an entity that is liable to the creditor with the debtor, an entity that has provided security to the creditor, the debtor or the trustee may file a proof of claim. 11 U.S.C. § 501(b) and (c).

in lawful currency of the United States as of the date of the filing of the petition, and shall allow

such claim in such amount, except to the extent that [the claim meets any one or more of the

standards or conditions set forth in the statute]."  11 U.S.C. § 502(b); see 11 U.S.C. § 502(d) and

(e).

The grounds listed in § 502(b) are the exclusive grounds under which a claim may be

disallowed.  Travelers, 127 S.Ct. at 1204.  Thus, a claim that is unenforceable against a debtor or

property of a debtor, under any agreement or applicable law, for a reason other than the claim is

contingent or unmatured, may not be allowed.  11 U.S.C. § 502(b)(1).  A claim for unmatured

interest may not be allowed.  11 U.S.C. § 502(b)(2).  A claim that is not timely filed may not be

allowed.  11 U.S.C. § 502(b)(9).  Section 502(b) does not list the failure to file a proof of claim

in any particular form as a reason for disallowance.  The only requirement is that a claim must be

filed with the Court under the provisions of § 501 of the Bankruptcy Code.  11 U.S.C. § 502(a).

Unless a claim is filed in accordance with § 501, any question regarding the allowance of

a claim under § 502 is irrelevant.  B-Real, LLC v. Melillo (In re Melillo), 392 B.R. 1, 5 (B.A.P.

1st Cir. 2008).  Once a proof of claim is properly filed under § 501, the creditor's entitlement to

allowance of the claim "arise in the first instance from [the terms of any agreement and] the

underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary

provisions of the Bankruptcy Code."  Travelers, 127 S.Ct. at 1205; Raleigh v. Illinois Dept. of

Revenue, 530 U.S. 15, 20 (2000) (under the Bankruptcy Code); Vanston Bondholders Protective

Comm. v. Green, 329 U.S. 156, 161 (1946) (under the Bankruptcy Act).  The basic rule is that

state law governs the substance of claims because Congress has "generally left the determination

6

of property rights in the assets of a bankrupt's estate to state law." <u>Raleigh</u>, 530 U.S. at 20

(quoting <u>Butner v. United States</u>, 440 U.S. 48, 54 (1979)); <u>Vanston</u>, 329 U.S. at 161.

Generally, a creditor seeking to establish a claim under state law has the burden of proof.

<u>See</u> <u>H & B Constr. Co. v. James R. Irwin & Sons, Inc.</u>, 105 N.H. 279, 281 (1964) (plaintiff had

burden of proving the contract was accepted by the defendant and the defendant had the burden

of proving the terms of the contract which supported his set-off and counterclaim); <u>Maloney v.</u>

<u>Boston Dev. Corp.</u>, 98 N.H. 78, 81 (1953) (plaintiff had the burden of producing evidence

establishing the intention of the parties and the nature and extent of their obligations under an

alleged oral contract).  However, where applicable law places the burden on a party other than

the creditor, then the burden of proof in an objection to a claim in bankruptcy court rests on the

objecting party.  <u>See</u> <u>Raleigh</u>, 530 U.S. at 26 (the burden of proof on an objection to a tax claim

follows state law and rests on the party objecting to the claim).  In this case, the burden of proof

to establish the Claims rests on the Creditors.

### B.    Bankruptcy Rule 3001

Rule 3001 establishes procedures for the filing of a proof of claim and associated

documents.  Rule 3001 defines a proof of claim as "a written statement setting forth a creditor's

claim."  Rule 3001(a).  However, Rule 3001 also requires a proof of claim to conform

substantially to the appropriate official form.  <u>Id.</u>  Both the Rule and Form B10 require that a

copy of the writing be attached to the Official Form when the claim is based on a writing.  Rule

3001(c); Official Form, Item 9.[7]  Item 4 on the Official Form requires a creditor to check a box if

---

[7] Item 9 in Form B10 states:  "Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien."

the claim includes interest or other charges in addition to the principal amount of the claim and then directs:  "Attach itemized statement of all interest or additional charges."  Finally, Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

Rule 3001 provides a procedural framework for the filing and allowance of proofs of claim.  Rule 3001 is a procedural rule prescribed by the United States Supreme Court under a delegation of authority from Congress.  See 28 U.S.C. § 2075.  Congress has authorized the Supreme Court "to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11."  Id.  However, the Congressional authorization expressly provides that "[s]uch rules shall not abridge, enlarge, or modify any substantive right."  Id.  Accordingly, the rules may not conflict with, or supersede, any provision of the Bankruptcy Code.  Heath v. American Express Travel Related Serv. Co., Inc. (In re Heath), 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005); Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation), 318 B.R. 147, 151 (B.A.P. 8th Cir. 2004).  If the Congressional delegation of rule-making authority to the Supreme Court does not include the authority to supercede substantive rights under the Bankruptcy Code, then official forms promulgated by the Judicial Conference of the United States under a delegation from the Supreme Court may not do so either.  See In re Kauffman, 354 B.R. 682, 684 (Bankr. D. Vt. 2006) (official form of application for chapter 7 fee waivers does not have the force and effect of law) (citing Simmons v. Ford Motor Credit Co. (In re Simmons), 237 B.R. 672, 675 (Bankr. N.D. Ill. 1999) (official forms do not have the force and effect of law)); Rule 9009.  The official forms must be construed in a manner consistent with the Bankruptcy Rules and the Bankruptcy Code.  Rule 9009.

8

### C.      Compliance with Rule 3001

The Creditors contend that Rule 3001 cannot alter their legal rights under the Bankruptcy Code and failure to comply with Rule 3001 cannot be a reason for disallowance of a claim because the grounds for disallowance are expressly set forth in § 502 of the Bankruptcy Code. The Court agrees with the Creditors' argument to the extent that the Bankruptcy Rules may not alter their substantive legal rights under the Bankruptcy Code.  However, Rule 3001, and the Official Form referred to in the Rule, do not alter the Creditors' legal rights.  Rule 3001 requires that a proof of claim be a written statement that conforms substantially to the Official Form.  The requirement that a "written statement" of a claim be filed with the bankruptcy court is not contrary to the requirements of §§ 501 and 502(a) which require a creditor to file a proof of claim if such claim is to be allowed.

Neither Rule 3001, nor § 502 of the Bankruptcy Code, provides that a proof of claim which does not comply with the provisions of Rule 3001 be disallowed due to such noncompliance.  Rather, Rule 3001 provides an evidentiary benefit to a creditor that files a claim that substantially complies with the Rule.  Rule 3001(f) provides that a proof of claim "executed and filed in accordance with these rules <u>shall constitute prima facie evidence of the validity and amount of the claim</u>."  Rule 3001(f) (emphasis added).  The Bankruptcy Appellate Panel for the First Circuit, referring to the Rule 3001(f) presumption, recently stated:

> An objection does not overcome this presumption unless it has substantial merit. <u>Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)</u>, 993 F.2d 915, 925 (1st Cir. 1993).  "It is often said that the objector must produce evidence equal in force to the prima facie case."  <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992).  If the objection contains such evidence, the claimant "is required to come forward with evidence to support its claims . . . and bears the burden of proving its claims by a preponderance of the evidence."  <u>In re Organogenesis, Inc.</u>, 316 B.R. 574, 583 (Bankr. D. Mass. 2004).  Generally, a

preponderance of the evidence is that evidence which is of greater weight or more convincing.  Hale v. Dep't of Transp., Fed. Aviation Admin., 772 F.2d 882[, 885] (Fed. Cir. 1985).

Tracey v. United States (In re Tracey), 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (footnotes omitted).

However, Rule 3001 does not alter the burden of proof in the claims allowance procedure.  It simply provides an evidentiary benefit to creditors who comply with the Rule and withholds that benefit from creditors who do not comply with the Rule.  If the Creditors have not substantially complied with the requirements of Rule 3001, the Claims are not entitled to the evidentiary benefit under Rule 3001(f).  "If the proof of claim is not entitled to prima facie validity then it may have a lesser evidentiary weight or none at all, but unless there is a factual dispute that is irrelevant."  Heath, 331 B.R. at 435.  Therefore, the Claims cannot be disallowed solely due to noncompliance with Rule 3001.  Rather, the Creditors must establish the validity and amount of their claim if a proper objection is filed.

### D. Establishing the Validity of a Credit Card Claim

A creditor that fails to obtain the evidentiary benefit available under Rule 3001(f), and is subject to a proper objection to the validity of its claim, must first present evidence sufficient to establish that it holds a valid claim against the debtor.  Dove-Nation, 318 B.R. at 152.  Establishing the validity of a claim involves proof on two elements:  (1) the existence and amount of the claim itself and (2) ownership of the claim.  Once a creditor has presented evidence of the validity of its claim, the burden shifts to the objecting party to present sufficient evidence to rebut the creditor's showing.

### 1. Proof of the Existence of a Credit Card Claim

10

For any claim based on a writing, Rule 3001(c) provides the preferred method for proving validity through its requirement that the "original [writing] or a duplicate shall be filed with the proof of claim."[8]  The requirement to establish the validity of a claim applies equally to claims based upon a revolving credit agreement, i.e. credit cards, as to other claims.  See In re Kemmer, 315 B.R. 706, 714 (Bankr. E.D. Tenn. 2004) (claims based upon credit card accounts fall within the scope of claims based upon a writing); In re Cluff, 313 B.R. 323, 334 (Bankr. D. Utah 2004) (Truth-in-Lending Act requires credit card agreements to be in writing); In re Henry, 311 B.R. 813, 817 (Bankr. W.D. Wash. 2004) (a credit card debt is a debt based upon a writing—a credit card agreement).

Of course, the credit card agreement itself "only establishes a line of credit that defines the terms of the parties['] future transactions . . . ." Cluff, 313 B.R. at 334.  In order to prove the amount of a claim, the agreement must be combined with other evidence, such as the writings which establish the actual transactions evidencing a debtor's incurrence of debt and the amount of the claim.  See Kemmer, 315 B.R. at 714.  However, a requirement that a credit card proof of claim include not only a credit card agreement, but also written evidence of each advance of credit, payment and charge would be unduly burdensome on creditors as well as on all other parties in interest.  See id. at 715.

An account summary attached to a proof of claim containing sufficient information to establish the identity of the debtor and the amount of the claim may be sufficient evidence, in the absence of any substantive objection to a claim, if it is a business record maintained by the creditor.  Dove-Nation, 318 B.R. at 152.  However, if the debtor's schedules, signed under oath,

---

[8]  The Rule also provides guidance for cases in which the original writing is lost or destroyed.

11

admit a liability on a claim in an amount less than a proof of claim, the schedules may constitute evidence sufficient to require a creditor to present evidence explaining the differences.  Id. Obviously, where the debtor's schedules do not list a claim at all, the creditor has the burden of establishing its claim with more than a bare bones summary of its records.

At a minimum, in order to establish the prima facie validity of a credit card claim, a proof of claim should include "(i) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing charges and fees included in the claim."  Henry, 311 B.R. at 818.  In addition, if the creditor is an assignee of the original credit card issuer in the agreement with the debtor, it must include evidence of the assignment or other evidence establishing ownership of the claim.  Melillo, 392 B.R. at 5-6.

A proof of claim supported by a summary, or a copy of a computer printout, which simply contains a balance due, account number, debtor's name and the like is not sufficient to establish the prima facie validity of a claim and to receive the benefit of Rule 3001(f) because it is not in substantial compliance with the requirements of Rule 3001(a) and (c).  However, if such a proof of claim is filed by a creditor, it satisfies the requirements of § 501 of the Bankruptcy Code and, absent a proper objection, would be allowed under § 502.  If an objection to such a claim is filed, the creditor may be required to submit additional documents or other evidence to satisfy its burden of proof with respect to its claim.

In addition to establishing the validity of a claim, a creditor must also prove the amount of its claim against the debtor.  See Rule 3001(a); In re Burkett, 329 B.R. 820, 829 (Bankr. S.D. Ohio 2005); Kemmer, 315 B.R. at 712; In re Hughes, 313 B.R. 205, 209 (Bankr. E.D. Mich.

2004).  With regard to revolving credit account creditors this proof should also take the form of the most recent, pre-petition account statement.  As discussed above, the monthly account statements issued by a creditor may be a satisfactory business record indicating the balance due on the debtor's account.  However, to the extent that the end of the period covered by the statement is prior to the date of the commencement of the bankruptcy case and the proof of claim is in an amount different than the balance on such statement, the creditor may also need to provide an account history beginning on the last day covered by the account statement and running up to the petition date.  This account history must reflect any final charges or payments not contained in the final account statement in order to establish the amount of the creditor's claim.  Finally, to the extent that interest accrues on the account between the date of the last account statement and the petition date and is included in the claim figure, the calculation of that amount must be included in such account history.

        The precise nature and extent of the evidence required to establish the validity of any particular credit card claim will depend on the facts of each case.  For the limited purpose of establishing prima facie evidence of validity, a monthly account statement, as a business record of the creditor, may be sufficient in the absence of an objection, if such statement includes all the pertinent information found in other documents, including the name of both the debtor and the creditor as well as the debtor's account number,[9] balance (as of the date the statement was issued) and the annual percentage rate charged on the account.  If the statement does not contain such information, it may be supplemented by other documents, statements or summaries.  If the

---

        [9]  In the interest of privacy, the account number on the account statement should be redacted so that only the last four digits are displayed.  See Official Form.

account statement is in the name of the debtor, or the joint debtors, and no other entity, and the

account number matches a debtor's schedules, it would suffice to establish the validity of the

claim, subject to the ownership requirement discussed below.

### 2.       Proof of Ownership of a Credit Card Claim

The second element in establishing the prima facie validity of a claim is presentation of

evidence that the person filing the claim is the owner of the claim.  See Melillo, 392 B.R. at 5.

The ownership requirement assures that the creditor asserting the claim does in fact have a legal

right to be paid the debt in question by the debtor.  See Rule 3001(b).  Only a creditor or an

indenture trustee may file a proof of claim.  11 U.S.C. § 501(a).  A pre-petition creditor is an

"entity that has a claim against the debtor that arose at the time of or before the [petition date]."

11 U.S.C. § 101(10)(A).  Accordingly, before a claim may be allowed, or disallowed, under §

502, it must be filed by or on behalf of the person or entity that actually holds the claim.  Melillo,

392 B.R. at 5.  A person or entity that claims to be an assignee of an original owner must provide

some evidence of their legal right to the claim.  Id. at 6.

For the owner of a credit card claim, evidence of ownership may take a variety of forms.

In the simplest of cases the creditor with whom the debtor initially entered into the credit card

relationship would be the party filing the claim.  In such a situation, proof of validity in the form

of either the credit card agreement or the most recent pre-petition account statement matching a

debt scheduled by the debtor may serve as prima facie proof of ownership.  Where the party

filing the claim is not the party with whom the debtor entered into the initial credit relationship,

the filing party should provide a copy of business records establishing their right to payment of

the claim.

> This requirement is most often relevant when a claim has been transferred or assigned and the assignee has attached no proof of actual ownership of the claim nor is the assignee's ownership of the claim substantiated by a debtor's schedules. See In re Parrish, 326 B.R. 708 (Bankr. N.D. Ohio 2005) (describing the problems involved with a transferred claim when the new owner of the claim has no documentary proof of the actual transfer or any original and reliable documents verifying the balance due on the claim); Hughes, 313 B.R. at 212 (noting that an assignee must prove its contractual basis for a right to payment when its right to payment is questioned).

Burkett, 329 B.R. at 830 n.6.

Where the identity of the creditor filing the proof of claim and the identification of the claim by account number match the debtor's bankruptcy schedules, the schedules may be admissible to establish the validity and ownership of a claim against a debtor as an admission under Federal Rule of Evidence 801(d)(2)[10] when the debtor is the objecting party. Torgenrud v. Wolcott (In re Wolcott), 194 B.R. 477, 483 (Bankr. D. Mont. 1996); see Rule 9017 (the Federal Rules of Evidence apply in cases under the Bankruptcy Code). When a claim has been assigned, the degree of documentation required to establish the ownership of the claim will vary depending upon the information in the debtor's schedules and other developments in the case, such as competing claims. See In re Samson, 392 B.R. 724, 731 (Bankr. N.D. Ohio 2008); In re Rochester, Nos. 03-32184-BJH-13, 03-34099-BJH-13, 2005 WL 3670877 (Bankr. N.D. Tex. May 24, 2005).

When the objecting party is the trustee, the bankruptcy schedules are not admissible as an admission against the trustee, but may be admissible under the residual exception in FRE 807 (formerly FRE 803(24)). Barry Russell, Bankruptcy Evidence Manual § 807.1, at 1480 (2007-2008). FRE 807 provides a trial court with the flexibility to eliminate unjustifiable expense and

---

[10]  In this opinion, the term "FRE" shall mean Federal Rule of Evidence.

delay in judicial proceedings.  Id.; FRE 102.  A statement not specifically covered by one of the

hearsay exceptions in FRE 803 or 804 may be admitted as an exception to the hearsay rule:

> A statement not specifically covered by Rule 803 or 804 but having equivalent
> circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule,
> if the court determines that (A) the statement is offered as evidence of a material
> fact; (B) the statement is more probative on the point for which it is offered than
> any other evidence which the proponent can procure through reasonable efforts;
> and (C) the general purposes of these rules and the interests of justice will best be
> served by admission of the statement into evidence.

FRE 807; Johnson v. Neilson (In re Slatkin), 525 F.3d 805, 812 (9th Cir. 2008) (debtor's plea

agreement relating to a Ponzi scheme admissible in a trustee's recovery action against

transferees of the debtor); but see Schering Corp. v. Pfizer Inc., 189 F.3d 218, 231 (2d Cir. 1999)

(surveys inadmissible because they lacked sufficient circumstantial guarantees of

trustworthiness).

> **E.      AmEx - POC 4**

AmEx's POC 4 did not comply with the requirements of Rule 3001 or the Official Form

because it did not include the credit card agreement or any evidence itemizing the charges

included in the claim.  Accordingly, POC 4 did not establish the prima facie validity of AmEx's

claim.

In the Claims Objection, the Trustee initially questioned the validity, amount and

ownership of the claim described in POC 4 filed by AmEx.  The objection was well founded

because AmEx had filed two other claims which matched entries in the Debtors' schedules while

the claim described in POC 4 was not included in the Debtors' schedules.  In addition, the

account statement filed with POC 4 reflected the name of a corporation in addition to the name

of one of the Debtors.  After the Claims Objection was filed, AmEx provided the Trustee with

copies of the credit card agreement and a monthly statement dated October 14, 2005, the date the Debtors filed their bankruptcy petition.  The one monthly statement provided to the Trustee by AmEx did not reflect any charges, interest or fees, but merely stated a balance due which matched the amount in POC 4.  After reviewing these additional documents, the Trustee withdrew his objections to the validity and ownership of the claim in POC 4.  However, the Trustee continues to object to the amount of the claim.

AmEx refused to provide the Trustee any further support for the amount of its claim, including any summary or itemization of the interest or other charges which are a part of its claim.  AmEx's refusal was based upon several legal arguments.  AmEx contends that at the beginning of each monthly billing cycle it computes the "account balance" in accordance with the credit card agreement and applicable federal laws and regulations, primarily the Truth-In-Lending Act, 15 U.S.C. § 1601 et seq., and then applies the applicable interest rate to the "account balance."  AmEx contends that interest and other charges are thereby converted into principal, thereby making all of the amount owed to it principal.  Therefore, pursuant to its contract with the Debtor and the application of applicable laws and regulations, no interest or other charges exist to be disclosed and no purpose would be served by imposing such a burden on the holder of a credit card claim.

The Trustee contends that the distribution priorities established by Congress in § 726 of the Bankruptcy Code provide for the subordination to payment of general unsecured claims any allowed claim for fines, penalties or forfeitures arising before the commencement of the bankruptcy case to the extent that such fine, penalty or forfeiture is not compensation for actual pecuniary loss.  He argues that under the Bankruptcy Act, Congress provided for the complete

17

disallowance of such claims based upon a Congressional policy to protect claims for actual pecuniary loss from arbitrary penalties and forfeitures.  See City of Philadelphia v. Gi Nam (In re Gi Nam), 273 F.3d 281, 290-91 (3d Cir. 2001) (discussing the history of the treatment of penalty claims under the Bankruptcy Act).  Under the Bankruptcy Code, Congress changed the treatment of such penalty claims from disallowance to subordination.  11 U.S.C. § 726(a)(4). The Trustee indicates that in the typical chapter 7 case subordination is the same as disallowance because general unsecured creditors rarely are paid in full.  However, when such creditors are paid in full, the allowed penalty claims are paid before any excess property is distributed back to a debtor.

AmEx's position would, in effect, prohibit bankruptcy court review of any charge, penalty or interest which predates the end of the monthly billing period immediately preceding the petition date.  Not surprisingly, AmEx has not cited any authority for this remarkable proposition.  A creditor's denomination of a charge as interest, late charge, default interest or the like is not controlling for purposes of claims allowance and claim distribution in bankruptcy. Bankruptcy courts are courts of equity.  Vanston, 329 U.S. at 165.  The allowance of interest and other charges in a bankruptcy proceeding involves a balancing of equities between creditor and creditor and between creditor and debtor.  Id.  AmEx may not exempt itself from the provisions of, or the policies behind, the claims allowance and distribution scheme under the Bankruptcy Code simply by classifying charges as principal every thirty days.  See Florida Asset Financing Corp. v. Dixon (In re Dixon), 228 B.R. 166, 176 (W.D. Va. 1998) (contractual default interest rate not a penalty on other creditors where the bankruptcy estate is solvent); In re AE Hotel Venture, 321 B.R. 209, 220 (Bankr. N.D. Ill. 2005) (a liquidated damages clause is enforceable

18

under state law so long as it is not a penalty); <u>In re Timberline Property Dev., Inc.</u>, 136 B.R. 382,

385-86 (Bankr. D.N.J. 1992) (default interest rate unenforceable as a penalty); <u>In re Hollstrom</u>,

133 B.R. 535, 539-40 (Bankr. D. Colo. 1991) (default rate of interest having no relationship to

actual or projected loss not allowed under § 506(b)); <u>In re White</u>, 88 B.R. 498, 511 (Bankr. D.

Mass. 1988) (default interest rate unenforceable as a penalty); <u>In re W.S. Sheppley & Co.</u>, 62

B.R. 271, 278 (Bankr. N.D. Iowa 1986) (contractual default interest rate not allowed under §

506(b)); <u>but see</u> <u>Crawforth v. Ajax Enterprises, LLC (In re Pheasant Cove, LLC)</u>, No. 07-06021-

TLM, 2008 WL 187529, at *5 (Bankr. D. Idaho Jan. 18, 2008) ("penalty" under § 726(a)(4)

includes only punitive, noncompensatory obligations intended to punish the debtor for

wrongdoing and not default interest and late charges under a contract).

AmEx also argues that all interest and charges are a matter of contract between the

Debtors and AmEx and cannot constitute a penalty or compensation for non-pecuniary loss.  Of

course, unless any contractual charge is <u>per se</u> not a penalty, neither the Trustee, nor the Court,

can make that determination in the absence of evidence of what has been charged under the

credit card agreement which documents the validity of the claim in POC 4.  Under the terms of

the credit card agreement signed by the Debtors, as well as applicable laws and regulations

governing such agreements, AmEx was entitled to charge interest, denominated as a "finance

charge," at a rate, variable or fixed, depending on the circumstances and condition of the

account, from time to time, under formulas which AmEx had the sole discretion to determine

from time to time.  In short, unlike a simple promissory note where the Trustee could determine

the economic terms supporting the proof of claim from a simple examination of the note itself,

no Trustee, debtor, third party or court can determine the nature, rate or amount of the interest

and charges levied by AmEx from the evidence submitted.  Therefore, neither the Trustee nor the

Court can determine whether such charges constitute penalties under § 726(a)(4).

Under the Bankruptcy Code, allowed unsecured claims that are timely filed, and a limited

class of allowed unsecured claims that are not timely filed, are granted second priority in

distributions under chapter 7.  11 U.S.C. § 726(a)(2).  Third priority is accorded to allowed

unsecured claims that are not timely filed.  11 U.S.C. § 726(a)(3).  Allowed claims for certain

penalty claims, whether secured or unsecured, are accorded fourth priority in distributions under

chapter 7 pursuant to § 726(a)(4), which provides:

> fourth, in payment of any allowed claim, whether secured or unsecured, for any
> fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages,
> arising before the earlier of the order for relief or the appointment of a trustee, to
> the extent that such fine, penalty, forfeiture, or damages are not compensation for
> actual pecuniary loss suffered by the holder of such claim.

11 U.S.C. § 726(a)(4) (emphasis added).  Absent at least a summary of the history of the account

or an itemization of the rate of interest and amounts of other charges levied against the Debtor's

account from time to time, the nature and amount of AmEx's claim cannot be determined.  The

one page account statement submitted by AmEx with its proof of claim and the eight account

statements subsequently provided by AmEx to the Trustee do not provide the Court with

sufficient information to determine the Claim.

AmEx cites Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735 (1996) and an

unpublished 2003 district court decision, Sheehan v. Infistar Corp. (In re Schafstall), No. Civ. A.

5:02-CV-146 (N.D. W.Va. Apr. 30, 2003), in support of its position that credit card late fees,

over-limit fees, and the interest thereon are not penalties subject to subordination under §

726(a)(4).  The Smiley decision provides no support for AmEx.  In Smiley, Justice Scalia clearly

20

drew a distinction between the court's decision in <u>Smiley</u> and other decisions involving penalties

in bankruptcy cases and under state usury laws.  <u>Smiley</u>, 517 U.S. at 746-47.  He noted that even

though a charge is denominated as interest, it may still constitute a penalty.  <u>Smiley</u> stands for

the unremarkable proposition that late charges imposed by credit card issuers are enforceable

under applicable nonbankruptcy law.

      In <u>Schafstall</u>, the district court affirmed a bankruptcy court decision that held that late

fees and the interest thereon cannot be considered penalties within the terms of § 726(a)(4), but

rather are compensation to the creditor for credit supplied under the credit card agreement

because such late fees and interest are part of a contractual agreement between the debtor and the

creditor.  <u>Id.</u> at *5-6.  The court also stated that the parties "are free to attempt to renegotiate the

terms of such contract or, if dissatisfied with the terms proposed, the parties have the right to

terminate the contract."  <u>Id.</u> at *5.  This Court disagrees with the rationale of the <u>Schafstall</u>

decision for two reasons.

      First, just because charges may be made pursuant to a contract, and might be enforceable

under applicable nonbankruptcy law, does not insulate them from the application of the

distribution provisions of the Bankruptcy Code.  In order for a filed claim to be allowed in a

chapter 7 proceeding, after an objection, it must be enforceable under applicable law.  11 U.S.C.

§ 502(b)(1).  Only after a claim is allowed under § 502, does § 726(a)(4) apply to subordinate

some or all of an allowed claim to the extent that it constitutes non-compensatory penalties to be

subordinated to other allowed unsecured claims.  Therefore, only claims that are otherwise

enforceable under applicable law may be subordinated as a non-compensatory penalty.  <u>See</u> <u>UPS</u>

<u>Capital Business Credit v. Gencarelli (In re Gencarelli)</u>, 501 F.3d 1, 6 (1st Cir. 2007) (only after

21

a claim for fees is allowable under § 502 is it assessed for reasonableness under § 506). Those claims that are not enforceable under applicable law will not be allowed and will not be entitled to any distribution. See Vanston, 329 U.S. at 170.

Second, the hypothetical contract scenario described in Schafstall (i.e., the bilateral negotiation of terms between the parties to the contract) bears no legal or factual relationship to the nature of credit card agreements or the conduct of the parties to such agreements. Consumers do not negotiate the terms of credit card agreements. At best, a consumer may "shop around" to find a credit card issuer that has the most advantageous terms for that consumer. At the commencement of the relationship, the credit card issuer and the consumer do make a bilateral voluntary decision to enter into a credit card agreement under the terms then offered. However, the consumer does not, and cannot, negotiate. The agreement is offered on a "take it or leave it" basis. Credit card issuers do not negotiate individual arrangements with customers.

Subsequent to the initiation of the relationship, the terms are neither negotiable nor fixed. The credit card agreement in this case is typical. The Debtor's credit card agreement with AmEx establishes the terms of the relationship between the parties. However, it grants to AmEx broad discretion to unilaterally change the terms of the relationship, including: (1) the right, in its sole discretion, at any time, to increase and/or decrease the credit line and cash advance limit; (2) the right to decline any attempted charge even if the charge would not cause the debtor to exceed its credit line or cash advance limit; (3) the right to unilaterally change the mathematical formulas specified in the credit card agreement for calculation of the finance charge if the formula produces mathematically similar results; (4) the right to exclude, in its discretion, certain debit transactions or fees from the calculation of the daily balance to which the finance charge is

applied; (5) the right to suspend or cancel the account, or any feature offered with the account, including reducing the credit line to an amount below the outstanding balance in its sole discretion, at any time, whether or not the account is in default and without prior notice to the debtor; and (6) the right to add, modify or delete any benefit, service or feature that may accompany the account at any time without notice.

For the purposes of this opinion, the Court assumes that all of these contract provisions, and any actions taken thereunder by AmEx, comply with applicable law.  The credit card agreement in this case bears little or no resemblance to the classic contract negotiated between two parties to establish the terms of their relationship.  Current credit card agreements provide the issuer with the right to unilaterally alter virtually all of the material terms of the contract, and to even terminate the contract, in whole or in part, with no notice to the consumer.[11]  Such agreements are pervasive in this country and are enforceable under applicable law.  However, the unilateral rights, which credit card issuers reserve to themselves under the terms of agreements drafted by them, provide the opportunity for them to impose charges, fees and interest thereon which, although enforceable under nonbankruptcy law, could be penalties subject to subordination under § 726(a)(4).

After all, regardless of the provisions of the credit card agreement, the card issuer may have exercised its right under the agreement to impose additional or different terms.  Under the terms of the typical credit card agreement, including the AmEx agreement in this case, the terms that exist between the issuer and the consumer at any particular time may only be determined if a

---

[11]  See, e.g., Ronald J. Mann, "Contracting" for Credit, 104 Mich. L. Rev. 899, 905, 908 (2006) (noting that standardized contracts, like credit card agreements, are usually not negotiated and that credit card agreements typically "reserve[] to the issuer the right to amend . . . at any time," with such amendments being "remarkabl[y] frequen[t]").

listing or historical summary of charges and interest is provided.  The agreement itself is at best only evidence of the existence of a contractual relationship, but is little or no evidence of the terms of the contract from time to time.  The need to provide details on the terms and conditions of the contract, and the actual charges and interest imposed, from time to time may be onerous from the credit card issuers's point of view.  However, such difficulties flow from the business model that the credit card industry has voluntarily adopted.  So long as credit card issuers wish to maintain sole discretion to vary the terms of their agreement with a consumer at any time, and from time to time, they must accept the legal consequences of that business model.  One of those consequences is that they may need to provide details of the charges and interest imposed by them in response to a proper objection to a proof of claim in a bankruptcy proceeding.

In the absence of any evidence of the contractual charges that constitute AmEx's claim under POC 4, this Court can make no finding that any of those charges are either allowable under § 502 or entitled to second priority in distribution under § 726(a)(2).  Unlike the circumstances in the objection to POC 18 (discussed below) the fact that the claim described in POC 4 was not scheduled by the Debtors requires AmEx to provide more evidence in support of its claim than might be ordinarily required.  Therefore, AmEx has failed to satisfy its burden of proof on the nature and amount of the claim in POC 4, and POC 4 shall be disallowed.

### F.    eCast - POC 18

POC 18 was filed by eCast Settlement Corporation, assignee of HSBC Bank Nevada NA/HSBC Card Services III.  Neither eCast, nor its purported assignor, were listed in the Debtors' schedules.  However, the last four digits of the account number in POC 18 agrees with a debt scheduled by the Debtors under the name "The GM Card."  No other proof of claim was

filed for this debt scheduled by the Debtors.  The Trustee apparently is satisfied that eCast is the owner of the claim.

eCast attached a single sheet of paper to its claim.  The attachment contains an apparent summary of information pertaining to the claim.  The summary indicates that the account was opened on October 11, 2000 and that the last payment date was December 5, 2004 or ten months prior to the commencement of this case on October 14, 2005.  The summary shows balances owed as of June 9, July 10, August 9, September 9, October 9 and November 9, 2005.  After October 9, 2005, the balance due, $6,813.06, did not change and is the amount listed in POC 18. The attachment did not contain any itemization or summary of charges or interest which make up the claim.  The Debtors scheduled the claim in the amount of $6,309.75.  eCast refused to provide the Trustee with any further itemization or summary of the charges or interest which constitute its claim.

The eCast claim differs from the AmEx claim by the fact that the Debtors acknowledged the debt in an amount equal to approximately 92.6% of the amount listed by eCast in POC 18 whereas the AmEx claim was not listed by the Debtors at all.  Accordingly, the statements by the Debtors in their schedules are admissible evidence of the amount of the claim under FRE 807. The Trustee has not offered any evidence to question the accuracy of the Debtors' schedules with respect to this claim or to specifically question the nature or amount of eCast's claim beyond the allegation that it exceeds the amount scheduled by the Debtors.  For the reasons discussed above, the Debtors' schedules, combined with the limited business record information submitted by eCast, provide limited but sufficient evidence to establish the nature and amount of its claim absent a substantive objection by the Trustee.  See Dove-Nation, 318 B.R. at 152; In re

<u>Shank</u>, 315 B.R. 799, 811-12 (Bankr. N.D. Ga. 2004).  The Court finds that eCast has failed to submit any admissible evidence to support any claim beyond the amount scheduled by the Debtors, and the Trustee has failed to present any evidence contradicting the Debtors' schedules or POC 18.  Accordingly, POC 18 shall be allowed in the amount scheduled by the Debtors, $6,309.75.

        **G.**      **Attorney's Fee Award Pursuant to NH RSA 361-C:2**

The Trustee has requested an award of attorney's fees under NH RSA 361-C:2.  The Court must deny the Trustee's request.  Although the Trustee was partially successful in his objection to POC 18, nothing in the record satisfies the condition in the first clause of NH RSA 361-C:2, namely, that the underlying contract provides for eCast to recover attorney's fees in any action against the Debtors.  The credit card agreement with AmEx does provide for AmEx to recover attorney's fees.  However, the agreement is governed by Utah law not New Hampshire law and the Trustee has failed to prove what Utah law would allow or that New Hampshire law would apply despite the terms of the credit card agreement.  Accordingly, the Trustee's request for attorney's fees shall be denied.


**IV.**      **CONCLUSION**

For the reasons set forth above, the Claims Objection is sustained with regard to POC 4 filed by AmEx and is sustained in part and overruled in part with regard to POC 18 filed by eCast.  POC 4 shall be disallowed.  POC 18 shall be allowed as a general unsecured claim but only in the amount of $6,309.75.  This opinion constitutes the Court's findings of fact and

conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court

will issue a separate order consistent with this opinion.

      ENTERED at Manchester, New Hampshire.


Dated: November 17, 2008        /s/ J. Michael Deasy
                          J. Michael Deasy
                          Bankruptcy Judge